# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

KALEB CATALA and DENISSE DEL VALLE RIVERA,

*Plaintiffs,*

v.

NSSK SAN JUAN, LLC d/b/a AUTO GRUPO NISSAN KENNEDY d/b/a AUTOGRUPO;

MOTORAMBAR, INC.; and BANCO POPULAR DE PUERTO RICO d/b/a POPULAR AUTO,

*Defendants.*

## Civil Action No.: 3:26-cv-01205-JAG

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## PRELIMINARY STATEMENT

This First Amended Complaint is filed as of right pursuant to Fed. R. Civ. P. 15(a)(1). No defendant has served an answer or Rule 12(b) motion. Requests for extension of time to respond are not answers and do not foreclose Plaintiffs' right to amend. This Amended Complaint supersedes the original Complaint in its entirety.

Defendants created a dual-document system in which the true terms of Plaintiffs' transaction existed only in internal records and were affirmatively misrepresented in every document submitted to a federally insured bank. The Hoja Interna — Kennedy/Autogrupo's own dealer management system record, produced to Plaintiffs under DACO administrative compulsion on April 6, 2026 in Querella Num. SAN-2025-0022299 — and the Retail Installment Contract submitted to Popular Auto reflect directly conflicting figures for the same transaction on the same date. Plaintiffs were the complainants in those DACO proceedings and are entitled to every document produced therein. The Hoja Interna records $7,500 MAI. The Retail

Installment Contract certifies $0.00. That contrast requires no inference.

The scheme involved: (1) certification of a fictitious $2,000.00 cash down payment to Popular Auto — a sum Plaintiffs explicitly refused to pay not once but twice during a ten-hour transaction involving multiple dealership personnel, submitted to the bank anyway without Plaintiffs' knowledge or consent; (2) deliberate suppression of a $7,500.00 Motorambar Authorized Incentive rebate internally recognized as a line item on Plaintiffs' specific transaction while $0.00 was certified to the bank; and (3) the sale of a $3,900.00 service contract into a market where Motorambar knew or should have known that certified EV repair infrastructure in Puerto Rico was critically insufficient. The combined fraudulent inflation of the financed amount is $11,400.00 — $7,500.00 in suppressed rebate plus $3,900.00 in a warranty sold without capacity to deliver it.

When Plaintiffs questioned the missing rebate and the post-closing demand for cash, Kennedy/Autogrupo's Vendedora Ruth Ortiz called Plaintiffs and stated that the dealership had barely made any profit on their transaction, that Plaintiffs should be grateful, and that the transaction had been a gift to them. That statement — made by an authorized employee while demanding payment of a sum falsely certified to a federal bank — is a party admission establishing awareness of the financial structure of the transaction and a conscious effort to characterize Plaintiffs' consumer rights as ingratitude rather than legal entitlement.

Motorambar received telephone notice of the charging port door defect on July 28, 2025 — the same day the Vehicle was presented for warranty repair — and received formal written demand by email on July 30, 2025. Motorambar did not respond for over five months. At the pleading stage, Plaintiffs are required only to allege plausible claims supported by factual content. The documentary contradictions, party admissions, and direct witness accounts alleged herein exceed that standard on every count.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This action arises under: the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.; the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 et seq.; and the civil RICO statute, 18 U.S.C. § 1964(c), predicated on violations of 18 U.S.C. §§ 1343, 1344, and 1014. Each statute independently confers federal question jurisdiction.

2. The amount in controversy substantially exceeds $50,000.00. Plaintiffs paid approximately $49,461.00 for the Vehicle and associated contracts ($44,862.00 vehicle price, $3,900.00 service contract, $699.00 GAP insurance). In addition: (a) loss of use for approximately 150 days due to a structural defect affecting the Vehicle's charging interface, conservatively calculated at 50% of reasonable rental value of a comparable vehicle at $40.00 to $70.00 per day, yielding approximately $3,000.00 to $5,000.00; (b) diminution in value due to the unresolved structural defect, vehicle discontinuation, and market depreciation, conservatively estimated at 10% to 15% of the purchase price, or approximately $4,500.00 to $7,000.00; and (c) the $7,500.00 suppressed manufacturer rebate caused Plaintiffs to pay an inflated price for a vehicle that did not conform to warranty, increasing the economic loss associated with the breach. Using conservative midpoint estimates, these warranty-related amounts total approximately $61,000.00 to $66,000.00, well above the jurisdictional threshold. In the alternative, jurisdiction exists under 28 U.S.C. § 1331 and § 1367. The total loan obligation of $96,180.00 ($1,145.00 x 84 months) independently satisfies any amount-in-controversy threshold.

3. This Court has supplemental jurisdiction over Puerto Rico Civil Code claims under 28 U.S.C. § 1367(a). All claims arise from the same transaction and common nucleus of operative facts.

4. Venue is proper under 28 U.S.C. § 1391(b)(2). All operative events occurred in Puerto Rico. The sale was executed in San Juan. Financing documents were transmitted through Puerto Rico banking networks. All defendants maintain their principal places of business in Puerto Rico.

5. NSSK San Juan, LLC is a Puerto Rico limited liability company incorporated and operating exclusively in Puerto Rico. Personal jurisdiction is established by its incorporation, physical presence, and the transaction giving rise to all claims. Subject matter jurisdiction is established by federal statute.

## II. PARTIES

6. Plaintiff Kaleb Catala is an adult resident of URB La Providencia, Calle 9 1Q3, Toa Alta, Puerto Rico 00953. At all relevant times Catala was a "consumer" within the meaning of 15 U.S.C. §§ 1602(i) and 2301(3). Catala was present at the Kennedy/Autogrupo dealership for

the entirety of the approximately ten-hour transaction on July 16, 2024, participated in negotiations including the two explicit refusals of the demanded down payment, and was a party to the vehicle purchase giving rise to all claims herein. Catala personally made the July 28, 2025 telephone call to Motorambar reporting the charging port door defect, during which Motorambar employee Paola received the call and stated she would pass it forward — a commitment Motorambar never honored. Catala is also a party to the post-closing communications in which Ruth Ortiz and Nelson Lopez demanded the $2,000.00 cash and made the statements alleged herein. Catala has suffered independent harm including financial injury from the fraudulently inflated loan payments, safety exposure during the 150-day unrepaired defect period as a regular user of the Vehicle as his sole means of transportation, and the direct experience of Motorambar's failure to respond to his personal warranty complaint.

7. Plaintiff Denisse Del Valle Rivera is an adult resident of the same address and the primary borrower and signatory on Retail Installment Contract No. 8220013221722000003. Del Valle Rivera was present at the Kennedy/Autogrupo dealership for the entirety of the approximately ten-hour transaction on July 16, 2024, participated in negotiations including the two explicit refusals of the demanded down payment, and is the primary obligor on the fraudulently inflated loan. At all relevant times Del Valle Rivera was a "consumer" within the meaning of applicable federal statutes. Plaintiffs bring this action as co-plaintiffs who each suffered independent harm arising from the same transaction.

8. Defendant NSSK San Juan, LLC d/b/a Auto Grupo Nissan Kennedy and Autogrupo ("Kennedy/Autogrupo") is a Puerto Rico limited liability company at Ave. Kennedy Km. 3.2, San Juan, Puerto Rico 00920. At all relevant times it was a "seller," "warrantor," and "creditor" or agent thereof within the meaning of applicable federal statutes. Kennedy/Autogrupo acted through its duly authorized employees: **Ruth Ortiz**, Vendedora (Factura No. 42734); **Nelson Lopez**, Finance Manager / Gerente de Ventas; and other authorized finance and sales personnel — including at least four to five additional dealership personnel involved in a transaction that spanned approximately ten hours on July 16, 2024 — for whose conduct Kennedy/Autogrupo bears full vicarious liability under P.R. Civil Code Art. 1540 (2020 Code).

9. Defendant Motorambar, Inc. ("Motorambar") is a Puerto Rico corporation and the exclusive authorized importer, distributor, and warranty-honoring entity for Nissan vehicles in Puerto

Rico and the U.S. Virgin Islands. The Puerto Rico Court of Appeals in Case KLRA201600879 has judicially determined that Motorambar is the importer, distributor, and warranty-honoring entity for Nissan vehicles in Puerto Rico — a judicial finding not subject to relitigation at the Rule 12(b)(6) stage. Motorambar created, funded, and published the $7,500.00 MAI rebate at issue. As exclusive Nissan parts distributor for Puerto Rico, Motorambar controls the availability of all Nissan replacement parts in the territory, including Part No. 78826-00008. Motorambar independently qualifies as a "warrantor" under 16 C.F.R. § 700.4 by virtue of its July 13, 2024 consumer-directed advertisement making written affirmations of fact relating to the Ariya 2023.

**10.** Defendant Banco Popular de Puerto Rico d/b/a Popular Auto ("Popular Auto") is a federally insured Puerto Rico banking institution and the creditor and assignee of Retail Installment Contract No. 8220013221722000003. Popular Auto's own internal loan processing system — Account No. 2322172202, processed July 18, 2024 at 2:06:40 PM by identified employee Jose Isaac (787-393-7270) — reflects the transaction terms as submitted by Kennedy/Autogrupo. Independent of 15 U.S.C. § 1641(a), Popular Auto is subject to the FTC Holder Rule, 16 C.F.R. § 433: as holder of the Retail Installment Contract bearing the required FTC Holder Notice, Popular Auto takes the contract subject to all claims and defenses Plaintiffs could assert against Kennedy/Autogrupo — without requiring proof of facial apparentness — up to the total amount paid. This is the primary basis for Popular Auto's liability. *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232 (1st Cir. 1990).

### III. TOLLING OF STATUTES OF LIMITATIONS

**11.** TILA — Affirmative Concealment: The one-year limitations period under 15 U.S.C. § 1640(e) is non-jurisdictional and presumptively subject to equitable tolling. *Boechler, P.C. v. Commissioner*, 596 U.S. 199 (2022). Every circuit to address the issue has held TILA subject to equitable tolling where fraudulent concealment prevented timely discovery. *Ellis v. GMAC*, 160 F.3d 703 (11th Cir. 1998); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037 (6th Cir. 1984). The First Circuit construes TILA liberally in favor of borrowers. *Bizier v. Globe Financial Services*, 654 F.2d 1 (1st Cir. 1981). This case presents affirmative concealment of a character stronger than the typical misdisclosure: the Hoja Interna — the document that proves the $7,500.00 MAI rebate was simultaneously recognized internally and suppressed externally — was in Kennedy/Autogrupo's exclusive possession and withheld through all pre-litigation

demands. It was produced only under DACO administrative compulsion to Plaintiffs on April 6, 2026. Plaintiffs were the complainants in those proceedings and are entitled to every document produced therein. No argument that Plaintiffs should not have had access to the Hoja Interna is available to Defendants — Plaintiffs obtained it through the lawful exercise of administrative rights. Kennedy/Autogrupo additionally made an affirmative false statement of legal obligation — "not obligated to apply" the advertised incentive — designed to terminate inquiry. Ruth Ortiz separately told Plaintiffs they should be grateful and that the transaction had been a gift when they questioned the transaction terms — framing their consumer rights as ingratitude rather than legal entitlement. Active withholding of the key document combined with affirmative statements designed to suppress inquiry satisfies every standard for equitable tolling. The limitations period did not begin to run until April 6, 2026. This action is timely.

**12.** Continuing Violation: Each monthly payment of $1,145.00 extracted on a fraudulently inflated principal constitutes an independent accrual event restarting the limitations clock. 21 such payments have been made as of this filing.

**13.** MMWA, RICO, and Civil Code Claims: Each carries a four-year limitations period and is timely on its face.

## IV. STATEMENT OF FACTS

### A. The Transaction — Ten Hours, Multiple Personnel, Two Refused Down Payment Demands

**14.** On July 16, 2024, Plaintiffs purchased a 2023 Nissan Ariya, VIN JN1AF0BA9PM409998 as reflected in the Retail Installment Contract, Tablilla KLL-014, model ARI-2302, Stock No. NPM409846 ("the Vehicle") from Kennedy/Autogrupo for a stated price of $44,862.00. The transaction spanned approximately ten hours at Kennedy/Autogrupo's dealership and involved at least four to five dealership personnel in addition to Vendedora Ruth Ortiz and Finance Manager Nelson Lopez.

**15.** During the transaction, Kennedy/Autogrupo's personnel demanded a $4,000.00 cash down payment from Plaintiffs. Plaintiffs refused. Kennedy/Autogrupo's personnel then demanded a $2,000.00 cash down payment. Plaintiffs refused again. Notwithstanding both explicit refusals, Kennedy/Autogrupo subsequently submitted a Retail Installment Contract to Popular Auto

certifying a Cash Down Payment of $2,000.00 — a sum Plaintiffs had twice refused to pay and never paid. This sequence of events — explicit demand, explicit refusal, false certification to the bank — establishes that the false down payment certification was a knowing and deliberate act, not a clerical error. One does not accidentally certify a payment that was explicitly refused.

16. The purchase was financed through Popular Auto under Retail Installment Contract No. 8220013221722000003 at an APR of 12.05%, generating monthly payments of $1,145.00 over 84 months — a total loan obligation of $96,180.00.

17. Plaintiffs traded in a 2020 Jeep Grand Cherokee, VIN 1C4RJEAG1LC323845, Tablilla JLL-990, credited at $18,000.00 actual cash value with a payoff balance of $35,303.00. Negative equity of $17,303.00 was rolled into the financed amount.

18. The transaction documents contain a facial discrepancy: the Orden de Compra reflects a VIN that differs from the VIN recorded in the Retail Installment Contract for the same vehicle. The vehicle color was also changed at the last moment without prior disclosure. These irregularities are consistent with a transaction in which document accuracy was subordinated to financing objectives.

## B. The Dual-Document System

19. On April 6, 2026, under compulsion of DACO administrative proceedings (Querella Num. SAN-2025-0022299) — initiated by Plaintiffs — Kennedy/Autogrupo produced its internal dealer management system record: the Hoja de Facturacion, DMS ID: 230054, July 16, 2024, 5:10 PM ("Hoja Interna"). Plaintiffs were the complainants in those proceedings and are entitled to every document produced therein. This document was withheld through all pre-litigation demands and produced only under government compulsion after administrative proceedings were initiated by Plaintiffs.

20. The Hoja Interna bears the same transaction identifiers as the Retail Installment Contract: VIN JN1AF0BA9PM409998, vehicle price $44,862.00, trade-in Tablilla JLL-990, financing institution Popular Auto. It is Kennedy/Autogrupo's own internal accounting record for this transaction.

21. The Hoja Interna records: **"Bonos/Rebates: $7,500 MAI."** The Retail Installment Contract certified to Popular Auto the same date records: **Rebate Amount: $0.00.** The Hoja

Interna records $7,500. The RIC reports $0. These documents reflect directly conflicting figures for the same line item on the same transaction on the same date. A $7,500.00 discrepancy in a rebate line item that directly affects the loan-to-value ratio submitted to a federally insured institution does not occur by accident in a transaction where both documents are generated the same day by the same entity.

22. The Hoja Interna records "Pronto Total: $2,000" with a blank receipt number field. The Orden de Compra executed the same day contains three receipt collection fields — Deposito Recibo, Pronto Recibo, and Balance Cobrado — each with a corresponding Recibo Num. field. All six fields are entirely blank. No receipt was issued. No cash was collected. The absence of any receipt number in all designated receipt fields, in direct contradiction to the $2,000.00 certified in the Retail Installment Contract, is a facial inconsistency apparent from the assigned documents themselves, requiring no external evidence.

23. Popular Auto's own internal loan processing system — Account No. 2322172202, processed July 18, 2024 at 2:06:40 PM by employee Jose Isaac (787-393-7270) — reflects the transaction as submitted: Cash Down Payment: $2,000.00; Rebate Amount: $0.00; Total Amount Financed: $65,003.50. The closing package Popular Auto received and funded included the Orden de Compra with six blank receipt fields directly contradicting the certified $2,000.00, and a $0.00 rebate on a vehicle advertised at $8,000.00 three days earlier. Popular Auto processed and funded that package.

### C. Ruth Ortiz's Admission — "Barely Made Any Profit" and "Be Grateful, This Was a Gift"

24. Following closing, Ruth Ortiz — Kennedy/Autogrupo's Vendedora on the transaction — contacted Plaintiffs by telephone to demand the $2,000.00 cash that had been certified to Popular Auto but never collected. During that call, Ruth Ortiz stated to Plaintiffs that Kennedy/Autogrupo had barely made any profit on their transaction, that Plaintiffs should be grateful, and that the transaction had been a gift to them. These statements were made in the context of demanding payment of a sum that had been falsely certified to a federally insured bank. They constitute a party admission by an authorized employee of Kennedy/Autogrupo acting within the scope of her employment, establishing: first, that Kennedy/Autogrupo was aware of the financial structure and margin of the transaction; second, that

Kennedy/Autogrupo characterized the suppressed rebate and favorable terms as a personal favor rather than a contractual right — directly contradicting the advertised and promised rebate; and third, that when Plaintiffs exercised their rights as consumers, Kennedy/Autogrupo's response was to frame those rights as ingratitude. This conduct reflects consciousness of guilt and a deliberate effort to discourage Plaintiffs from pursuing the consumer protections to which they were entitled.

25. Nelson Lopez, Finance Manager, also participated in the post-closing demand for the $2,000.00 cash. The post-closing demand by the same personnel who processed the transaction is a direct party admission that no cash had been collected at signing and that the $2,000.00 certification to Popular Auto was false.

### D. The MAI Rebate — No Credit Score Requirement, No Legitimate Basis for Suppression

26. On July 13, 2024 — three days before Plaintiffs' purchase — Motorambar published a full-page consumer-directed advertisement in El Nuevo Dia offering: "Bono de $8,000 ($7,500 MAI + $500 MAS), aplica a Ariya 2023, ARI-2302." The advertisement offered a choice: the $8,000.00 rebate OR a 2.99% APR financing option. A credit score requirement appeared only in connection with the 2.99% APR option — not with the rebate.

27. This distinction reflects commercial reality. Motorambar is a vehicle distributor, not a lender. It does not bear credit risk on the buyer's loan. The MAI rebate was Motorambar's mechanism to move 2023 Ariya inventory. No credit score threshold appeared in connection with the rebate in the published advertisement — only in connection with the separate 2.99% APR financing option. Defendants' own advertising confirms that no credit score requirement attached to the rebate Plaintiffs were entitled to receive.

28. Ruth Ortiz and Nelson Lopez verbally represented to Plaintiffs during pre-sale negotiations that the promotional rebate would be applied. Plaintiffs relied on these representations. Kennedy/Autogrupo subsequently stated it was "not obligated to apply" the advertised incentive — a statement that contradicts its own prior oral representations, the published advertisement, and the Hoja Interna's simultaneous internal recognition of the rebate.

29. The MAI rebate was a consumer-directed incentive published in a full-page newspaper advertisement. It was not a confidential dealer margin adjustment. Its certification as $0.00 to a

federally insured lender — while being simultaneously recognized as $7,500.00 in the internal DMS record — was a false statement of a material fact affecting the loan-to-value ratio of the transaction.

30. Upon information and belief, the suppression of MAI and equivalent manufacturer rebates was not limited to Plaintiffs' transaction. The scheme constitutes a repeatable financing structure applied during manufacturer incentive periods, capable of repetition and affecting multiple consumers. Multiple consumer accounts provide contextual evidence of Kennedy/Autogrupo's financing practices: Ariel Aviles (Google Local Guide, 133 reviews) documented Kennedy/Autogrupo quoting prices approximately $15,000.00 above Nissan's required dealer price; Edwin Alfredo and Ivan Irizarry documented parallel pricing and financing irregularities with direct management involvement. These accounts are offered not as proof of MAI suppression in other specific transactions but as contextual evidence of an enterprise in which management-level personnel were involved in pricing and financing irregularities — Kennedy/Autogrupo's owner publicly acknowledged one such complaint warranted investigation. Upon information and belief, additional retail installment contracts transmitted during the same MAI promotional period reflect identical rebate suppression, a fact uniquely within Defendants' control and appropriate for targeted discovery.

31. The 2023 Nissan Ariya has been discontinued for the 2026 model year. Current Nissan Ariya models are available at some dealerships with manufacturer rebates of up to $20,000.00. Plaintiffs are obligated on an 84-month loan through 2031 on a discontinued vehicle purchased at an inflated price with a suppressed rebate, while the market has moved decisively against them. This is a continuing and compounding harm directly caused by Defendants' misrepresentations at the time of sale.

## E. The Warranty Failure — 150 Days, One Service Center, One Technician, Complete Radio Silence

32. The availability of competent warranty service for a fully electric vehicle is a material fact directly affecting merchantability, safety, and intended use. The charging port door is the primary structural barrier protecting the Vehicle's high-voltage charging interface — the only means by which a fully electric vehicle receives power — from water infiltration. Puerto Rico receives significant tropical rainfall throughout the year. With the charging port door deformed

and unable to properly seal, every rainfall event exposes the Vehicle's high-voltage charging interface to moisture, creating risk of electrical damage, corrosion of charging components, and potential safety hazard during charging operations. The defect substantially impairs the Vehicle's value, its safe operability, and its core function as an electric vehicle.

33. At the time of sale, Kennedy/Autogrupo represented that certified EV service was available in Puerto Rico. Prior to presenting the Vehicle for repair, Plaintiffs contacted approximately four to five Nissan service centers in Puerto Rico. Only one — Autocentro Nissan, 1088 Munoz Rivera Avenue, San Juan — accepted the Vehicle for EV warranty service. Upon presenting the Vehicle, Autocentro Nissan employee Luis Rodriguez informed Plaintiffs — and laughed while doing so — that only one technician in the facility was qualified to service the Nissan Ariya. This statement, made by an authorized employee of an authorized Nissan dealer operating under Motorambar's distribution network, confirms what Plaintiffs were not told at the time of sale.

34. On July 28, 2025, Plaintiffs presented the Vehicle at Autocentro Nissan. Service Advisor Juan L. Colon documented the defect and classified Part No. 78826-00008 as Special Order. The Vehicle was returned unrepaired with the charging port door open and exposed. That same day, Plaintiff Kaleb Catala contacted Motorambar directly by telephone regarding the charging port door defect. Motorambar employee **Paola** received the call, acknowledged the complaint, and stated she would pass it forward to the appropriate department. Motorambar never followed up on that commitment. On July 30, 2025, Plaintiffs sent formal written demand to **info@motorambar.net** identifying the defect and requesting resolution. That email is in Plaintiffs' possession and will be produced at the Court's direction. Motorambar received both contacts.

35. Motorambar did not respond to the telephone contact. Motorambar did not respond to the written demand. For over five months, Motorambar provided no acknowledgment, no status update, no alternative service arrangement, and no communicated timeline of any kind. On December 19, 2025 — 144 to 150 days after the initial repair request — Layna Marrero of Autocentro Nissan, not Motorambar, notified Plaintiffs that the part had arrived.

36. The reasons for Motorambar's five months of complete silence are matters within Motorambar's exclusive knowledge. Discovery is necessary and warranted to establish the full record of Motorambar's internal response, or absence thereof. What is already established is

the consequence: Plaintiffs drove a fully electric vehicle with an exposed, deformed charging port door through 150 days of Puerto Rico's tropical weather with no functioning warranty channel, no acknowledged claim, and no communicated repair timeline. The Vehicle was Plaintiffs' sole means of transportation — no alternative vehicle was available to them. Continued use of a defective vehicle when no alternative exists is not acceptance or waiver of warranty rights. *Ventura v. Ford Motor Corp.*, 433 A.2d 801 (N.J. App. Div. 1981). Had a more serious electrical or safety failure occurred during those 150 days, Plaintiffs had no service infrastructure to address it.

37. Motorambar, as exclusive Nissan parts distributor in Puerto Rico, controlled the availability of Part No. 78826-00008. Parts unavailability in Puerto Rico is a consequence of Motorambar's own distribution-level decisions. Motorambar cannot invoke as a defense a condition caused by its own operational choices.

38. Motorambar has accumulated over 400 formal DACO complaints — an institutional record of non-response reflecting organizational practice, not isolated oversight.

39. Plaintiffs paid $3,900.00 for an extended service contract financed into the Retail Installment Contract and included in the $65,003.50 total amount financed. Kennedy/Autogrupo sold this contract without disclosing that certified EV warranty service for the 2023 Nissan Ariya was critically unavailable in Puerto Rico — a material omission that directly affected the value of the contract purchased. Plaintiffs were not told that only one service center in Puerto Rico would accept the Vehicle, that only one technician was qualified to service it, or that a single parts delay could leave the Vehicle unrepaired for nearly five months. Had Plaintiffs known these facts, they would not have paid $3,900.00 for a service contract covering a vehicle that could not be serviced within a reasonable time. Plaintiffs have been paying interest on this amount since August 2024.

## V. QUANTIFICATION OF HARM

40. The fraudulent inflation of the financed amount has two documented components: (a) the $7,500.00 suppressed MAI rebate that should have reduced the purchase price but was instead certified as $0.00 to Popular Auto; and (b) the $3,900.00 extended service contract financed into the loan and sold in circumstances where it was known to be undeliverable within a reasonable time. The combined fraudulent inflation of the financed amount is $11,400.00. The

$2,000.00 phantom down payment constitutes a separate and independent TILA violation — falsely reducing the stated Amount Financed and making every downstream disclosure simultaneously inaccurate — but does not add to the principal inflation because it was credited on paper as a reduction of the amount owed.

41. At 12.05% APR over 84 months, the monthly payment attributable to the fraudulent $11,400.00 inflation of the principal is approximately $201.54 per month. Plaintiffs' actual monthly payment is $1,145.00. Had the transaction been accurately documented, Plaintiffs' monthly payment would have been approximately $943.46. The excess extracted per month is approximately $201.54.

42. As of this filing, Plaintiffs have made 21 monthly payments. The total excess extracted to date is approximately $4,232.34. Under 18 U.S.C. § 1964(c), this figure is subject to trebling, yielding approximately $12,697.02 in RICO damages on payments already extracted. The excess continues to accrue at approximately $201.54 per month across the 63 remaining payments of the 84-month loan — an additional $14,897.02 in future excess if the loan is not remedied. The total excess extraction over the full 84-month loan is approximately $16,929.36 — the documented financial consequence to one family of a falsified Retail Installment Contract.

## VI. CAUSES OF ACTION

## COUNT I — TRUTH IN LENDING ACT

15 U.S.C. §§ 1601 et seq., 1638, 1640, 1641

*Against Kennedy/Autogrupo and Popular Auto*

43. Plaintiffs incorporate all preceding paragraphs.

44. TILA and Regulation Z, 12 C.F.R. § 1026, require accurate disclosure of the Amount Financed, Finance Charge, APR, and Total of Payments. Any inaccuracy in a material disclosure constitutes a per se TILA violation. *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232 (2004). The Retail Installment Contract contains two independent material violations established by Defendants' own simultaneous records:

**Violation 1 — False Down Payment ($2,000.00):** The RIC certifies Cash Down Payment: $2,000.00. Plaintiffs twice explicitly refused to pay any down payment during the transaction. The Hoja Interna records no cash receipt. The Orden de Compra has six blank receipt fields. The post-closing demand by Ruth Ortiz and Nelson Lopez is a party admission that no cash was collected. This false certification reduced the stated Amount Financed, rendering every downstream TILA disclosure — Finance Charge, APR, Total of Payments — simultaneously inaccurate. *Gilbert v. Wood Acceptance Co.*, 486 F.2d 627 (7th Cir. 1973); *Rayburn v. Car Credit Center Corp.*, 2000 WL 1508238 (N.D. Ill. 2000).

**Violation 2 — Suppressed MAI Rebate ($7,500.00):** The RIC certifies Rebate Amount: $0.00. The Hoja Interna records $7,500 MAI on the same transaction, same date. Under 12 C.F.R. § 1026.18(b), a rebate reducing the purchase price must be accurately disclosed as a component of the Amount Financed. The suppression inflated the Amount Financed, the Finance Charge, and the Total of Payments — each exceeding Regulation Z tolerances. *Jones v. Bill Heard Chevrolet*, 212 F.3d 1356 (11th Cir. 2000); *Gibson v. Bob Watson Chevrolet-Geo*, 112 F.3d 283 (7th Cir. 1997).

**45.** Popular Auto's primary liability rests on the FTC Holder Rule, 16 C.F.R. § 433, which subjects it as holder to all claims and defenses Plaintiffs could assert against Kennedy/Autogrupo, up to the total amount paid, without requiring proof of facial apparentness. Independently, the documents received by Popular Auto as assignee contained internal inconsistencies detectable by comparison: the Orden de Compra's six blank receipt fields against the certified $2,000.00, and the $0.00 rebate on a vehicle publicly advertised at $8,000.00 three days earlier. The absence of receipt numbers in all designated receipt fields is a facial inconsistency requiring no external evidence. Popular Auto is liable as assignee under § 1641(a). *Taylor v. Quality Hyundai*, 150 F.3d 689 (7th Cir. 1998); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232 (1st Cir. 1990).

**46.** The limitations period is tolled as pleaded in Section III. This action is timely. Plaintiffs are entitled to statutory damages of twice the finance charge per violation, actual damages, and attorney's fees under § 1640(a).

## COUNT II — MAGNUSON-MOSS WARRANTY ACT

15 U.S.C. §§ 2301 et seq., 2304, 2308, 2310(d)

*Against Kennedy/Autogrupo and Motorambar*

**47.** Plaintiffs incorporate all preceding paragraphs.

**48.** The Vehicle is a "consumer product" sold with a "written warranty" within the meaning of 15 U.S.C. §§ 2301(1) and 2301(6). The MMWA expressly applies to Puerto Rico. 15 U.S.C. § 2301(15). The amount in controversy substantially exceeds $50,000.00 as pleaded in paragraph 2. The total loan obligation of $96,180.00 independently satisfies any amount-in-controversy threshold.

**49.** Motorambar is a warrantor on three independent and cumulative grounds: (a) the Puerto Rico Court of Appeals in Case KLRA201600879 has judicially determined that Motorambar is the importer, distributor, and warranty-honoring entity for Nissan vehicles in Puerto Rico — not subject to relitigation; (b) as exclusive Nissan parts distributor for Puerto Rico, Motorambar controls all warranty parts fulfillment; and (c) Motorambar's July 13, 2024 consumer-directed advertisement constitutes a written affirmation under 16 C.F.R. § 700.4, independently establishing warrantor status.

**50.** The MMWA requires warranty service within a reasonable time. 15 U.S.C. § 2304(a)(1). The FTC's benchmark under 16 C.F.R. § 703.5(e) is 40 days. Plaintiffs presented the Vehicle on July 28, 2025. The required part did not arrive until December 19, 2025 — 144 to 150 days later, nearly four times the FTC benchmark. This delay is documented to the day by the repair order and Layna Marrero's email and is unreasonable as a matter of law.

**51.** The parts-unavailability defense fails on three independent grounds. First, parts unavailability does not toll the reasonableness analysis — the risk of delay rests on the warrantor, not the consumer. *Milicevic v. Fletcher Jones Imports*, 402 F.3d 912 (9th Cir. 2005); *Ayer v. Ford Motor Co.*, 503 N.W.2d 767 (Mich. Ct. App. 1993). Second, Motorambar as exclusive parts distributor caused the unavailability it would invoke as a defense. Third, Motorambar never communicated the parts delay to Plaintiffs despite receiving telephone notice on July 28, 2025 and written demand on July 30, 2025. A warrantor that receives formal notice of a defect and remains silent for five months cannot invoke parts unavailability as a defense it chose not to disclose.

52. Prior to sale, Defendants failed to disclose that certified EV repair infrastructure in Puerto Rico was critically insufficient. Only one service center among four to five contacted accepted the Vehicle, and that center had only one qualified technician — confirmed by Autocentro Nissan employee Luis Rodriguez. Motorambar sold a fully electric vehicle into a market it knew lacked the service capacity to maintain it. A defendant cannot create the conditions causing a warranty breach and invoke those conditions as a defense.

53. The safety implications of an unrepaired charging port door cannot be characterized as cosmetic. The charging port door protects the Vehicle's high-voltage charging interface from water infiltration in a tropical climate with frequent rainfall. Every rainfall event during the 150-day delay exposed that interface to moisture. With one qualified technician at one accepting service center in all of Puerto Rico, and the Vehicle being Plaintiffs' sole means of transportation, had a more serious electrical or safety failure occurred during that period, Plaintiffs had no functioning recourse. That exposure to unaddressed safety risk over 150 days is itself a cognizable harm under the MMWA.

54. Any IDR exhaustion requirement under 16 C.F.R. § 703.5(e) is excused on three independent grounds. First, Plaintiffs were never informed of the existence of any IDR mechanism — not at the time of sale, not in any warranty documentation, and not in response to either the July 28 telephone contact or the July 30 written demand. Under 16 C.F.R. § 703.2, a warrantor must disclose any IDR mechanism clearly and conspicuously. No such disclosure was made. Second, Motorambar's five-month complete silence establishes futility — a warrantor that does not respond for five months has demonstrated the mechanism will not provide a remedy. Third, IDR exhaustion is not a jurisdictional prerequisite but a procedural condition subject to this Court's equitable authority to excuse under these circumstances. A warrantor cannot benefit from an exhaustion requirement it rendered impossible to satisfy.

55. Kennedy/Autogrupo's sale of the $3,900.00 service contract — financed into the Retail Installment Contract — independently and absolutely bars any disclaimer of the implied warranty of merchantability under 15 U.S.C. § 2308(a). The implied warranty that the Vehicle would function as a safely chargeable electric vehicle was breached by the 150-day inability to repair its charging port door.

56. Plaintiffs' continued use of the Vehicle during the 150-day repair delay does not defeat revocation of acceptance. The Vehicle was Plaintiffs' sole means of transportation and no

alternative was available. Continued use of a defective vehicle when no alternative exists is necessity, not waiver. *Ventura v. Ford Motor Corp.*, 433 A.2d 801 (N.J. App. Div. 1981).

**57.** Plaintiffs are entitled to: revocation of acceptance and full refund of all amounts paid; consequential and incidental damages including the $3,900.00 service contract rendered worthless from the date of sale; loss of use during the 150-day repair delay; diminution in value from vehicle discontinuation and market depreciation; and mandatory attorney's fees under § 2310(d)(2).

## COUNT III — CIVIL RICO

18 U.S.C. § 1964(c), predicated on §§ 1343, 1344, and 1014

*Against Kennedy/Autogrupo*

**58.** Plaintiffs incorporate all preceding paragraphs.

**59. Enterprise:** Kennedy/Autogrupo (NSSK San Juan LLC) is a legal entity engaged in interstate commerce through the electronic transmission of financing documents to a federally insured institution via EVERTEC interstate banking networks. The enterprise's financing operation involved identified participants including Ruth Ortiz (Vendedora), Nelson Lopez (Finance Manager), at least four to five additional dealership personnel involved in the ten-hour transaction, and Popular Auto employee Jose Isaac (787-393-7270), who processed Account No. 2322172202 on July 18, 2024.

**60. Four Predicate Acts — Full Rule 9(b) Particularity:**

> **Predicate Act 1 — Bank Fraud, 18 U.S.C. § 1344:** WHO: Nelson Lopez, Finance Manager, Kennedy/Autogrupo. WHAT: False certification of $2,000.00 Cash Down Payment to Popular Auto after Plaintiffs had twice explicitly refused to pay any down payment. WHEN: July 16, 2024. WHERE: Retail Installment Contract No. 8220013221722000003. HOW: Plaintiffs refused $4,000 down, refused $2,000 down, Kennedy/Autogrupo certified $2,000 anyway. The Hoja Interna records no cash receipt; the Orden de Compra has six blank receipt fields; the post-closing demand is a party admission. *Loughrin v. United States*, 573 U.S. 351 (2014).

**Predicate Act 2 — Bank Fraud, 18 U.S.C. § 1344:** WHO: Same. WHAT: Suppression of the $7,500.00 MAI rebate — the Hoja Interna records $7,500; the RIC certifies $0.00 — to obtain a larger bank-funded loan on false pretenses. WHEN: July 16, 2024. WHERE: Same Contract. HOW: Directly conflicting figures on the same line item, same transaction, same date. *Shaw v. United States*, 580 U.S. 63 (2016); *Neder v. United States*, 527 U.S. 1 (1999).

**Predicate Act 3 — Wire Fraud, 18 U.S.C. § 1343:** Electronic transmission of the falsified Retail Installment Contract bearing both material misrepresentations to Popular Auto for funding via EVERTEC interstate banking networks, on or about July 16-18, 2024, confirmed by Popular Auto's internal processing timestamp of July 18, 2024 at 2:06:40 PM.

**Predicate Act 4 — False Statement to Federally Insured Institution, 18 U.S.C. § 1014:** Knowingly making false statements — the $2,000.00 phantom down payment and the $0.00 suppressed rebate — for the purpose of influencing Popular Auto's action on a loan application. Section 1014 independently criminalizes false statements made to influence a federally insured bank's credit decision, constituting a fourth independent predicate act across a third federal criminal statute. *United States v. Kenrick*, 221 F.3d 19 (1st Cir. 2000) (en banc).

**61. Pattern — Relatedness:** All four predicate acts share the same purpose, the same participants, the same victim institution, and the same fraudulent transaction. Relatedness is established as a matter of law.

**62. Pattern — Continuity:** Plaintiffs acknowledge that open-ended continuity from a single transaction presents a pleading challenge under *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000). The scheme, however, constitutes a repeatable financing structure applied during manufacturer incentive periods, capable of repetition and affecting multiple consumers — bringing it within the "regular way of doing business" exception that *Efron* expressly preserves from *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). Named consumer accounts with management-level acknowledgment provide contextual support. Upon information and belief, additional retail installment contracts during the same MAI promotional period reflect identical rebate suppression — a fact uniquely within Defendants' control. Even targeted, limited discovery of those contracts will either confirm or refute

whether suppression was systematic. Dismissal before that production forecloses claims plausibly established by Defendants' own internal records. Closed-ended continuity is independently established by four predicate acts across three federal criminal statutes and multiple wire transmissions spanning the transaction period.

**63. Scienter:** The Hoja Interna eliminates any innocent explanation. Kennedy/Autogrupo's DMS recorded $7,500 MAI on July 16, 2024 while its finance manager certified $0.00 to Popular Auto the same date. Plaintiffs explicitly refused to pay any down payment — twice — before Kennedy/Autogrupo certified $2,000.00 anyway. When Plaintiffs questioned the transaction, Ruth Ortiz told them to be grateful and that the deal had been a gift — while simultaneously demanding cash that had been falsely certified to a federal bank. These facts, individually and collectively, establish knowing and deliberate misrepresentation.

**64. Document Preservation Demand:** All Defendants are hereby placed on notice to preserve all retail installment contracts transmitted to Popular Auto or any lender during active MAI or equivalent promotional periods; all DMS records for corresponding transactions; and all internal communications regarding MAI rebate application. Destruction of any such records following receipt of this Amended Complaint would constitute spoliation subject to sanctions.

**65. Direct Injury:** The $11,400.00 fraudulent principal inflation generates approximately $201.54 in excess monthly payments. Over 21 payments, approximately $4,232.34 has been extracted, trebling to approximately $12,697.02 under § 1964(c). *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008); *Systems Mgmt., Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002).

**66.** Plaintiffs are entitled to treble actual damages and attorney's fees under 18 U.S.C. § 1964(c).

## COUNT IV — DOLO CONTRACTUAL / FRAUDULENT INDUCEMENT

Puerto Rico Civil Code Arts. 1217, 1232, 1233, 1441, 1540, 1802, 1803

*Against All Defendants*

**67.** Plaintiffs incorporate all preceding paragraphs.

**68.** The 2020 Puerto Rico Civil Code governs this transaction. Under Art. 1540(d)-(f), employer vicarious liability is a near-absolute regime. *Yadira Perez Hernandez v. Lares Medical Center*, 2021 TSPR 119. Dolo causante voids the contract under Art. 1232. Art. 1233 includes deliberate concealment of facts parties were duty-bound to disclose. *Portugues-Santana v. Rekomdiv International*, 657 F.3d 56 (1st Cir. 2011).

**69.** The following material misrepresentations and omissions induced Plaintiffs' consent:

(a) False certification of a $2,000.00 down payment after two explicit refusals — established by the Hoja Interna, Orden de Compra, and party admission;

(b) Suppression of the $7,500.00 MAI rebate — the Hoja Interna records $7,500; the RIC certifies $0.00;

(c) Oral representations by Ruth Ortiz and Nelson Lopez that the rebate would be applied — actionable under Art. 1441 and not barred by any integration clause. A contract term cannot immunize the fraud that induced consent to that same contract. *Colon v. Glamorous Nails*, 167 D.P.R. 33 (2006);

(d) Ruth Ortiz's statements during the post-closing collection call — that Plaintiffs should be grateful and that the transaction had been a gift to them — made while demanding payment of a sum falsely certified to a federally insured bank, constituting dolo by conduct designed to discourage Plaintiffs from asserting their legal rights under Art. 1233;

(e) Oral representations that certified EV service was available in Puerto Rico — false, as confirmed post-sale;

(f) Failure to disclose that EV service infrastructure in Puerto Rico was wholly insufficient for the 2023 Nissan Ariya — actionable dolo by silence. *Marquez v. Torres Campos*, 111 D.P.R. 854 (1982);

(g) Sale of a $3,900.00 extended service contract knowing that basic warranty service could not be delivered within a reasonable time.

**70.** Kennedy/Autogrupo bears vicarious liability under Arts. 1540, 1798, and 1803 for all acts of Ruth Ortiz, Nelson Lopez, and all other personnel involved in the transaction. *Sagardia de Jesus v. Hosp. Aux. Mutuo*, 177 D.P.R. 484 (2009).

**71.** Motorambar bears direct liability under Art. 1802 on three independent grounds: as creator of the MAI program it failed to implement any dealer compliance mechanism; it received formal demand by telephone on July 28, 2025 and written demand on July 30, 2025 and did not respond for over five months; and as exclusive parts distributor it caused the 150-day warranty repair delay. *Martinez v. Bristol Myers*, 147 D.P.R. 839 (1999).

**72.** Popular Auto's liability is independent and does not rest on solidarity with Kennedy/Autogrupo. Popular Auto bears three independent bases for liability: assignee liability under 15 U.S.C. § 1641(a) for violations detectable from the assigned documents; holder liability under 16 C.F.R. § 433 as holder of the contract bearing the required FTC Holder Notice; and liability under Art. 1802 as a sophisticated federally insured commercial lender that processed and funded a closing package containing the internal inconsistencies described herein. These are independent theories, not derivative solidarity claims. *Banco Popular de P.R. v. Oliveros et al.*, No. 23-cv-01310 (D.P.R. Mar. 31, 2026).

**73.** Dolo causante voids the contract ab initio. *Ocaso v. Puerto Rico Maritime Shipping Authority*, 915 F. Supp. 1244 (D.P.R. 1996). Any integration clause cannot insulate Defendants from dolo claims.

**74.** Prior to filing this action, Plaintiffs demanded resolution of the financing irregularities and warranty defect through DACO administrative proceedings (Querella Num. SAN-2025-0022299), which proceedings resulted in the production of the Hoja Interna under compulsion. Kennedy/Autogrupo had constructive and actual notice of Plaintiffs' claims through those proceedings. Plaintiffs additionally made direct pre-suit written demands to Motorambar on July 30, 2025. Defendants had full opportunity to remedy the harms alleged herein and declined to do so.

**75.** Plaintiffs are entitled to: judicial declaration of nullity of the Contract; full restitution of all amounts paid; return of the 2020 Jeep Grand Cherokee VIN 1C4RJEAG1LC323845 or cancellation of all trade-in obligations; actual and consequential damages; moral damages in an amount no less than $25,000.00, reflecting the financial stress caused by fraudulently inflated loan payments, the harassment experienced during post-closing collection calls in which Plaintiffs were told to be grateful for a transaction that defrauded them, and 150 days of safety exposure while driving a defective fully electric vehicle as their sole means of transportation with no functioning warranty recourse; and all further relief this Court deems

just.

## RESERVATION OF RIGHTS

Plaintiffs expressly reserve the right to seek leave to amend this Complaint to reinstate, expand, or supplement the civil RICO claims set forth in Count III, or to add additional defendants, should discovery or other proceedings disclose facts further establishing the pattern, continuity, or enterprise elements alleged herein. The retail installment contracts transmitted by Kennedy/Autogrupo to Popular Auto during active MAI and equivalent promotional periods have not yet been produced. Should this Court find the RICO allegations insufficient at the pleading stage, that finding is made without the benefit of that documentary record, and Plaintiffs' right to seek amendment upon its production is expressly preserved. Fed. R. Civ. P. 15(a)(2).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and:

a. Award statutory and actual damages under TILA § 1640(a) against Kennedy/Autogrupo and Popular Auto for both the false down payment and the suppressed rebate as independent violations;

b. Award treble damages under 18 U.S.C. § 1964(c) against Kennedy/Autogrupo on actual RICO damages of approximately $4,232.34 extracted to date and accruing at approximately $201.54 per month;

c. Order revocation of acceptance of the Vehicle and full refund of all amounts paid under the MMWA against Kennedy/Autogrupo and Motorambar;

d. Declare Retail Installment Contract No. 82200132221722000003 null and void under P.R. Civil Code Art. 1217 and order Popular Auto to cancel all outstanding loan balances;

e. Order return of the 2020 Jeep Grand Cherokee VIN 1C4RJEAG1LC323845 or cancellation of all financial obligations arising from the trade-in transaction;

f. Award consequential and incidental damages including the $3,900.00 service contract rendered worthless from the date of sale, loss of use during the 150-day unrepaired defect period, and diminution in value from vehicle discontinuation and market depreciation;

g. Award moral damages under Puerto Rico Civil Code in an amount no less than $25,000.00;

h. Award mandatory attorney's fees and costs under 15 U.S.C. §§ 1640(a)(3) and 2310(d)(2), and 18 U.S.C. § 1964(c);

i. Award total damages of no less than $100,000.00 inclusive of treble damages; and

j. Grant such other and further relief as this Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

April 28, 2026

_Kaleb Catala_

Kaleb Catala, Pro Se Plaintiff

_Denisse Del Valle Rivera_

Denisse Del Valle Rivera, Pro Se Plaintiff

URB La Providencia, Calle 9 1Q3

Toa Alta, Puerto Rico 00953

Tel: 787-381-6303 | KALEBB2323@GMAIL.COM