# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

KALEB CATALA DEL VALLE and
DENISSE DEL VALLE RIVERA,

    Plaintiffs,

        v.

NSSK SAN JUAN, LLC d/b/a AUTO
GROUP NISSAN KENNEDY d/b/a
AUTOGROUP; Et al.;

    Defendants.

DOCKET NO. 3:26-CV-01205-JAG

**DEFENDANT MOTORAMBAR, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (COUNT II AND COUNT IV) INCLUDING ALL CLAIMS ASSERTED BY PLAINTIFF KALEB CATALA, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Motorambar, Inc. ("MAI") respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint (ECF No. 14), specifically Count II (Magnuson-Moss Warranty Act) and Count IV (Dolo Contractual/Fraudulent Inducement) as to MAI, together with all claims that Plaintiff Kaleb Catala asserts for lack of standing. MAI states as follows:

## INTRODUCTION

Plaintiffs filed their Original Complaint on April 6, 2026 (ECF No. 1), and on April 28, 2026—before any defendant answered—Plaintiffs filed a First Amended Complaint (ECF No. 14). These new allegations fail to cure the Original Complaint's fundamental defects. The Amended Complaint still fails to plausibly allege that MAI issued a written warranty (ECF No. 14, ¶¶ 9, 49), owed Plaintiffs any obligation under the MMWA, or made any particularized

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*          *Docket No. 3:26-cv-01205-JAG*

misrepresentation that induced Plaintiffs' contract (ECF No. 14, ¶¶ 67–75). The Amended

Complaint likewise fails to establish Catala's standing as a non-signatory to any operative

agreement (ECF No. 14, ¶¶ 6, 7).

Accordingly, Rules 12(b)(6) and 9(b) warrant dismissal. Rule 12(b)(1) independently

supports dismissal because Plaintiffs fail to plead non-speculative MMWA damages meeting the

$50,000 statutory threshold. Even accepting Plaintiffs' new factual assertions as true for Rule 12

purposes, the claims against MAI fail to state a claim upon which relief can be granted, and the

Court should dismiss them with prejudice. Further, the Court should dismiss all allegations

Plaintiff Catala advances because he lacks standing to bring any claim under the causes of action

alleged.

## I.      NEW ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiffs' First Amended Complaint asserts federal-question jurisdiction under TILA, the

MMWA, and civil RICO, and supplemental jurisdiction over Puerto Rico Civil Code claims

(ECF No. 14, ¶¶ 1–3). The Amended Complaint adds that Plaintiff Catala was present

throughout the July 16, 2024 dealership transaction, "participated in negotiations," "was a party

to the vehicle purchase," and personally placed a July 28, 2025 warranty-related call to MAI,

followed by a July 30, 2025 email notice (ECF No. 14, ¶¶ 6, 34, 35). Plaintiffs now allege that

MAI received those contacts yet remained silent for approximately five months until a dealer

notified them on December 19, 2025 that the part had arrived (ECF No. 14, ¶ 35).

The pleading further asserts that MAI qualifies as a "warrantor" because it serves as the

exclusive authorized importer/distributor, controls warranty parts availability, and purportedly

made written affirmations in a July 13, 2024 consumer advertisement. Plaintiffs invoke an

inapposite Puerto Rico appellate decision (KLRA201600879) to characterize MAI as the

"warranty-honoring entity" for Nissan vehicles in Puerto Rico (ECF No. 14, ¶¶ 9, 49). Plaintiffs also substantially revise their damages narrative, claiming that the MMWA amount in controversy exceeds $50,000 by combining alleged loss of use, diminution in value, and other categories, and by referencing the total loan obligation (ECF No. 14, ¶¶ 2, 48). Finally, Plaintiffs reference administrative proceedings before DACO—specifically "Querella" or Complaint No. SAN-2025-0022299—to explain the production of the dealership's "Hoja Interna" document, which they contend contradicts the Retail Installment Contract (ECF No. 14, ¶ 19).

## II.    STATEMENT OF RELEVANT FACTS

This action arises from the July 16, 2024 purchase and financing of a 2023 Nissan Ariya from co-defendant NSSK San Juan, LLC d/b/a Auto Grupo Nissan Kennedy d/b/a Autogrupo, financed by co-defendant Banco Popular de Puerto Rico d/b/a Popular Auto under Retail Installment Contract No. 8220013221722000003 (ECF No. 14, ¶¶ 14, 16). The Amended Complaint alleges that Popular Auto's system reflected a $2,000 "Cash Down Payment" and a "Rebate Amount: $0.00," and that the closing package included documents that Plaintiffs contend conflict with those entries (ECF No. 14, ¶¶ 21–23). Critically, the Amended Complaint directs its core "dual document" and financing-structure allegations at dealership conduct and bank processing—not at any independent conduct by MAI.

As to warranty service, Plaintiffs allege the vehicle exhibited a defect in the charging port cover and that on July 28, 2025, they presented the vehicle to Autocentro Nissan for warranty repair; a special-order part arrived approximately 150 days later on December 19, 2025 (ECF No. 14, ¶¶ 32, 34, 35). Plaintiffs now add that Catala, a non-party to the transaction, telephoned MAI on July 28, 2025, and that Plaintiffs emailed MAI on July 30, 2025 seeking resolution—yet MAI did not respond (ECF No. 14, ¶¶ 34, 35). Plaintiffs also contend that Puerto Rico's EV

service infrastructure proved insufficient and attribute parts availability and warranty channel control to MAI as distributor (ECF No. 14, ¶¶ 33, 37, 52).

Notably, the Amended Complaint does not allege that MAI sold the Vehicle to Plaintiffs, signed the purchase or retail installment contracts, operated the service facility that handled the repair order, or made the dealership's pre-sale oral representations regarding a promotional rebate on which Plaintiffs allegedly relied (ECF No. 14, ¶¶ 8, 9, 14, 28, 34). Nor do Plaintiffs allege that MAI prepared, submitted, or certified any retail financing documents to Popular Auto in connection with the alleged $2,000 down payment entry or $0.00 rebate entry that anchors the TILA and RICO theories asserted against the other defendants (ECF No. 14, ¶¶ 15, 21, 60).

### III.    LEGAL STANDARDS

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim plausible on its face; courts must disregard threadbare recitals of elements and conclusory allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The First Circuit likewise requires more than labels and conclusions and refuses to credit allegations that merely parrot the elements of a claim. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8, 12 (1st Cir. 2011). Because Count IV sounds in fraud, Rule 9(b) applies and requires particularized pleading of the who, what, when, where, and how, as to each defendant. *Dumont v. Reily Foods, Co.*, 934 F.3d 35, 38-39 (1st Cir. 2019); *see also Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004); *and Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004).

Rule 12(b)(1) requires dismissal where subject-matter jurisdiction is lacking; the MMWA independently imposes a $50,000 amount-in-controversy threshold exclusive of interests and costs. 15 U.S.C. § 2310(d)(3)(B).

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

## IV.   ARGUMENT

### A. Count II (MMWA) Should Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Still Fail to Plead a Prima Facie Claim Against MAI.

To state an MMWA claim, Plaintiffs must plausibly allege that (i) MAI is a "warrantor," (ii) a defect covered by a written warranty existed, (iii) the warrantor failed to remedy that defect within a reasonable time, (iv) Plaintiffs afforded the warrantor a reasonable opportunity to cure before filing suit, and (v) the warrantor's noncompliance caused Plaintiffs' damages. *See* 15 U.S.C. §§ 2301, 2304, 2310; *Blumer v. Acu-Gen Biolabs, Inc.*, 638 F. Supp. 2d 81, 87-89 (D. Mass. 2009). Even with the new allegations, the Amended Complaint fails to satisfy any of these elements as to MAI.

#### 1. Plaintiffs Fail to Allege That MAI Is a "Warrantor"

Plaintiffs continue to rely on the conclusory premise that MAI qualifies as a warrantor because it serves as the exclusive distributor, controls parts, and published a consumer advertisement that they characterize as a written affirmation under 16 C.F.R. § 700.4 (ECF No. 14, ¶¶ 9, 49). The MMWA defines "warrantor" as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5); and 16 C.F.R. § 700.4. The Amended Complaint fails to identify any written warranty that MAI "gave or offered" to Plaintiffs in connection with the vehicle.

The July 13, 2024 advertisement[1] offering a "Bono de $8,000" (ECF No. 14, ¶ 26) does not constitute a "written warranty" within the meaning of the MMWA. The MMWA defines a "written warranty" as a written affirmation or promise relating to "the nature of the material or

---

[1] It is worth noting that Plaintiffs have failed to produce the alleged advertisement to support their conclusory assertions.  If the alleged advertisements are those that were produced at the DACO proceedings, none of them were either issued or published by MIA.

workmanship" of a consumer product, or an undertaking to refund, repair, or replace the product if it fails to meet specified standards. 15 U.S.C. § 2301(6). As alleged, the advertisement concerns price alone—a dollar rebate on a vehicle purchase—and says nothing about materials, workmanship, performance to a specified standard, or any remedial commitment by MAI in the event of product failure. A statement promising a dollar-value reduction in the sales price does not transform into a warranty obligation simply because Plaintiffs append a statutory citation to it in the First Amended Complaint. Plaintiffs do not allege that they saw or relied on MAI's advertisement as a warranty when deciding to purchase the Vehicle; the pre-sale representations they describe are alleged oral statements by dealership personnel about applying the rebate to the price (ECF No. 14, ¶ 28)—not MAI representations about product quality. Plaintiffs also fail to attach or quote the alleged MAI advertisement in the First Amended Complaint.

Plaintiffs' invocation of the Puerto Rico appellate decision labeled KLRA201600879 (ECF No. 14, ¶ 9) fails because that decision constitutes an intermediate appellate judgment binding only on the parties to that case and carries no precedential value. In Puerto Rico, it has been held that judgments from the intermediate Court of Appeals do not establish binding precedent and are not authoritative beyond the specific parties involved in the case. *Rivera Maldonado v. Commonwealth*, 119 D.P.R. (1987), 1987 PR Sup. LEXIS 141; *see also, Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo Constr. Corp.),* 515 B.R. 410, 415 (P.R. Bcy. 2014)*.* The decision cannot salvage Count II in any event: the Amended Complaint neither attaches the decision nor pleads its scope, and Plaintiffs must still allege facts establishing MAI's warrantor status under the MMWA's statutory definitions. Even crediting Plaintiffs' characterization *arguendo*, the Amended Complaint fails to allege that MAI "gave or offered a written warranty" to Plaintiffs as 15 U.S.C. § 2301(5) requires.

### 2. Plaintiffs Fail to Allege That MAI Failed to Provide Warranty Service

Plaintiffs' new allegations that MAI received a telephone call on July 28, 2025 (ECF No. 14, ¶ 34) and an email on July 30, 2025 (ECF No. 14, ¶ 35) regarding the defect, and did not respond for several months, fail to plausibly allege a breach of any MMWA duty. The pleading never establishes that MAI owed Plaintiffs an MMWA warranty obligation in the first place. The Amended Complaint confirms that Autocentro Nissan—a non-party dealer—handled the warranty service (ECF No. 14, ¶ 34), and nowhere alleges that MAI operated or controlled that service provider or that the dealer acted as MAI's agent. Absent non-conclusory facts establishing warrantor status and an agency or control relationship tying the dealer's conduct to MAI, Plaintiffs cannot impute any alleged delay at Autocentro to MAI under *Twombly* and *Iqbal*.

### 3. Plaintiffs Fail to Allege That MAI Was Afforded a Reasonable Opportunity to Cure

The MMWA imposes a mandatory pre-suit condition: "no action . . . may be brought . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). The Amended Complaint identifies a repair request presented to Autocentro Nissan and a parts wait at that facility (ECF No. 14, ¶¶ 34, 35), but fails to allege that Plaintiffs presented the Vehicle to MAI for inspection or repair, that MAI bore any contractual or statutory duty to perform repairs, or that MAI refused a concrete opportunity to cure under an actual MAI warranty. Even crediting the new communications alleged in paragraphs 34 and 35, the pleading never connects those contacts to a specific MAI warranty obligation as the statutory "opportunity to cure" element requires. Failure to satisfy the pre-suit cure requirement as to a particular defendant warrants dismissal. *See Blumer*, 638 F. Supp. 2d at 87.

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

*4. Plaintiffs Impermissibly Rely on Group Pleading*

Plaintiffs impermissibly rely on group pleading that blurs dealership conduct, lender processing, and distributor marketing into collective "Defendants" allegations without satisfying Rule 8 as to MAI's separate role. The Amended Complaint itself confirms that Count I (TILA) and Count III (RICO) target only dealership and lender conduct—not MAI—yet the same factual nucleus anchors the MMWA pleading without supplying any specific facts about MAI's own warranty obligations or breach (ECF No. 14, ¶¶ 43–46 (TILA against Kennedy/Autogrupo and Popular Auto); ¶¶ 58–66 (RICO against Kennedy/Autogrupo)). Conclusory allegations that "Defendants" failed to complete the repair cannot satisfy *Iqbal* and *Twombly* as to MAI individually.

The warranty damages alleged—loss of use during the 150-day repair delay (ECF No. 14, ¶¶ 36, 53), diminution in value (ECF No. 14, ¶ 31), and the $3,900.00 extended service contract (ECF No. 14, ¶ 39)—all arise from the delayed repair that Autocentro Nissan performed and from Kennedy/Autogrupo's alleged failure to provide adequate warranty infrastructure. The Amended Complaint pleads no factual basis from which the Court could infer that MAI's conduct caused Plaintiffs' warranty-related damages. MAI's alleged wrongdoing, as described in the Amended Complaint, relates solely to the unapplied promotional rebate—a theory sounding in fraud and misrepresentation, not in breach of warranty. The MMWA provides no remedy for the non-application of promotional incentives; a promotional rebate is not a "written warranty," "implied warranty," or "service contract" within the meaning of 15 U.S.C. § 2310(d)(1).

**B. Count II Should Be Dismissed Under Rule 12(b)(1) Because Plaintiffs Still Fail to Plead Non-Speculative MMWA Damages Meeting the $50,000 Jurisdictional Threshold**

The MMWA requires at least $50,000 in amount in controversy, **exclusive** of interest and costs, attributable to the MMWA claim. 15 U.S.C. § 2310(d)(3)(B). Attorney's fees qualify as "costs" under the MMWA and do not count toward the threshold. *Santiago v. DaimlerChrysler Corp.*, 265 F. Supp. 2d 171, 172 (D.P.R. 2003). Plaintiffs' Amended Complaint attempts to vault the threshold by aggregating asserted loss of use, diminution in value, and other amounts (ECF No. 14, ¶ 2), but it remains legally deficient for jurisdictional purposes for two independent reasons.

First, much of Plaintiffs' newly quantified "warranty-related amounts" rests on speculative estimates within broad ranges, presented without the factual granularity needed to plausibly allege jurisdictional facts (ECF No. 14, ¶ 2 (alleging damages "conservatively calculated at 50% of reasonable rental value of a comparable vehicle at $40.00 to $70.00 per day" and "conservatively estimated at 10% to 15% of the purchase price")). Such conjectural damages, calculated at convenient "midpoint estimates," fail to satisfy the MMWA's jurisdictional pleading requirement.

Second, the $7,500[2] "suppressed manufacturer rebate" that Plaintiffs attempt to fold into "warranty-related" damages (ECF No. 14, ¶ 2(c)) does not qualify as an MMWA damage category. A failure to comply with a written warranty, implied warranty, or service contract did not cause it; rather, it represents a price incentive theory tied to dealership financing and alleged misrepresentations—not to a MAI warranty obligation. The MMWA's private right of action is limited to damages caused by the failure of a supplier, warrantor, or service contractor to comply with warranty obligations; promotional rebates fall outside that scope. Plaintiffs' request for "total damages of no less than $100,000.00 inclusive of treble damages" (ECF No. 14, Prayer ¶ i)

---

[2] This figure was $8,000.00 initially, as alleged in the original complaint.  ECF No. 1.

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

likewise fails: treble damages are available only under the Civil RICO count (Count III), which

Plaintiffs assert solely against Kennedy/Autogrupo (ECF No. 14, ¶¶ 58–66), not against MAI.

The MMWA does not provide for treble damages, and Plaintiffs cannot aggregate damages

across unrelated causes of action to manufacture the statutory threshold.

Excluding attorney's fees and the rebate-related claim, the only quantified damage

specifically attributable to the MMWA claim is the $3,900.00 extended service contract (ECF

No. 14, ¶ 39). The remaining damages—"loss of use" and "diminution in value"—appear without

any dollar amount grounded in non-speculative facts from which the Court could assess whether

they approach, let alone exceed, $50,000.00. The Complaint's MMWA claim rests on a single

defect—a deformed exterior charging port cover (ECF No. 14, ¶ 32)—not a fundamental

nonconformity warranting full revocation of a $44,862.00 vehicle. Indeed, Plaintiffs concede

they continued to operate the vehicle throughout the 150-day repair period (ECF No. 14, ¶ 36).

### C. In the Alternative, Count II Should Be Dismissed Without Prejudice or Stayed Under the Exhaustion/Primary-Jurisdiction Doctrine

Should the Court reach the prudential question, dismissal without prejudice or a stay

remains appropriate under the exhaustion/primary-jurisdiction doctrine to allow Puerto Rico's

Department of Consumer Affairs (DACO) to address warranty issues within its specialized

competence. DACO possesses statutory authority to adjudicate consumer warranty disputes and

to award remedies including repair, replacement, refund, and rescission. *See P.R. Tele-Com, Inc.*

*v. Ocasio Rodriguez*, 747 F. Supp. 836, 838 (D.P.R. 1990); *Tex. P.R., Inc. v. Maldonado*, 862 F.

Supp. 692, 694 (D.P.R. 1994). Although Plaintiffs reference DACO proceeding SAN-2025-

0022299 for purposes of document production (ECF No. 14, ¶ 19), the Amended Complaint does

not allege that DACO adjudicated, or even entertained, the warranty defect, parts delay, or

10

remedies, or that Plaintiffs exhausted applicable administrative processes before invoking this Court's MMWA jurisdiction. Plaintiffs initiated the administrative proceedings they identify to obtain documents from Kennedy/Autogrupo (ECF No. 14, ¶ 74), not to seek adjudication of warranty claims against MAI. Given DACO's specialized expertise and the incompletely developed administrative record, the Court should dismiss Count II without prejudice or stay it pending DACO proceedings.

None of the recognized exceptions to administrative exhaustion applies here. First, Plaintiffs cannot demonstrate futility: DACO possesses authority to adjudicate consumer warranty disputes and to award the remedies Plaintiffs seek. *See* 10 L.P.R.A. § 257. Second, Plaintiffs cannot show inadequacy of the administrative remedy because DACO is the specialized forum the Legislature designed to resolve precisely these issues. Third, Plaintiffs allege no irreparable harm that would justify bypassing the administrative process; the warranty repair has, by Plaintiffs' own admission, already been completed (ECF No. 14, ¶ 35). Lastly, Plaintiffs' motion at ECF No. 15 acknowledges that they voluntarily dismissed their DACO complaint without obtaining any judgment from that agency—demonstrating that Plaintiffs chose to abandon, rather than exhaust, their administrative remedies before burdening this Court with the same dispute they had pending before DACO.

### D. Count IV (Dolo Contractual / Fraudulent Inducement) Should Be Dismissed as to MAI Under Rules 12(b)(6) and 9(b)

*1. The Complaint Fails to Establish a Prima Facie Case of Dolo Against MAI*

Dolo as a defect of consent under Puerto Rico law requires that one contracting party induce another, by "words or insidious machinations," to execute a contract the other party otherwise would not have made. 31 L.P.R.A. § 3408. The First Circuit treats dolo in contract

formation as "essentially fraud in the inducement," requiring proof of (1) a false representation by the defendant, (2) reasonable and foreseeable reliance by the plaintiff, (3) injury resulting from the reliance, and (4) intent to defraud. *Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 62 (1st Cir. 2011). The Amended Complaint fails to satisfy these elements as to MAI.

*First*, Plaintiffs fail to allege a knowingly false representation by MAI. The Amended Complaint does not plead the "who, what, when, where, and how" of any MAI statement to Plaintiffs; instead, it attributes pre-sale representations about the rebate's application to Kennedy/Autogrupo's "sales personnel and finance manager" (ECF No. 14, ¶ 28 (identifying Ruth Ortiz and Nelson Lopez as the dealership personnel who verbally represented the rebate would be applied)). The sole representation even arguably attributable to MAI is the published rebate advertisement (ECF No. 14, ¶ 26), yet on Plaintiffs' own theory, that advertisement truthfully described a manufacturer-authorized price incentive. Plaintiffs' theory presupposes the rebate existed and should have been applied—not that the advertisement contained a false statement. A truthful advertisement that a dealership subsequently fails to honor does not constitute a "knowingly false representation" by the advertiser. *See O'Ferral v. Trebol Motors, Corp.*, 45 F.3d 561, 563 (1st Cir. 1996); s*ee also Ahern v. Scholz*, 85 F.3d 774, 793 (1st Cir. 1996).

*Second*, Plaintiffs fail to plead MAI's intent to deceive or to induce reliance. The Amended Complaint alleges no circumstances from which this Court could plausibly infer that MAI intended Plaintiffs to rely on a false rebate promise in executing a retail installment contract reflecting $0.00 in rebates. Plaintiffs' theory is that the dealership suppressed the rebate (ECF No. 14, ¶¶ 21, 29)—conduct Plaintiffs attribute entirely to Kennedy/Autogrupo.

12

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

*Third*, Plaintiffs fail to allege actual or justifiable reliance on any representation by MAI. The Amended Complaint alleges that Plaintiffs relied on Kennedy/Autogrupo's oral representations (ECF No. 14, ¶ 28), not on any statement by MAI. The causal chain runs exclusively through the dealership's conduct in suppressing the rebate.

*Fourth*, Plaintiffs' attempt to plead dolo by omission fails. Actionable concealment requires a duty to disclose, grounded in good faith and the circumstances of the transaction. *See P.C.M.E. Commer. S.E. v. PACE Membership Warehouse*, 952 F. Supp. 84, 92–93 (D.P.R. 1997). The Amended Complaint alleges no facts establishing that MAI—an entity that neither negotiated nor signed the retail contract (ECF No. 14, ¶¶ 8, 9)—owed Plaintiffs any disclosure duty at the dealership closing.

### 2. Count IV Fails Because MAI Is Not a Party to the Contracts Plaintiffs Seek to Invalidate

Count IV seeks contract-based relief: Plaintiffs ask the Court to "declare [the] Retail Installment Contract . . . null and void" and order restitution (ECF No. 14, ¶ 75; Prayer ¶ d). Puerto Rico's Civil Code defines dolo as conduct "on the part of one of the contracting parties," 31 L.P.R.A. § 3408, expressly framing dolo as a doctrine that attacks the validity of a bilateral juridical act. Plaintiffs do not allege that MAI signed the Retail Installment Contract or the purchase agreement—they allege only that MAI serves as a distributor involved in marketing and incentives (ECF No. 14, ¶ 9). Kennedy/Autogrupo and Popular Auto—not MAI—executed the sales and financing documents with Plaintiffs (ECF No. 14, ¶¶ 7, 8, 10, 14, 16).

Although the 2020 Civil Code recognizes that "dolo grave" may be committed by "una parte o un tercero" (a party or a third party), that recognition does not relieve Plaintiffs of their burden to plead with particularity that MAI, as the alleged third party, intentionally acted to induce Plaintiffs to execute the specific juridical act at issue (ECF No. 14, ¶¶ 67–73). As

13

demonstrated above, Count IV pleads no such facts, and Rule 9(b) independently requires particularized allegations identifying the speaker, the statement, the time, the place, and the content of the alleged third-party inducement.

### 3. The Complaint Fails to Establish an Agency Relationship

Plaintiffs attempt to sweep MAI into the dolo count through "vicarious liability" concepts, citing Civil Code articles on principal/agent responsibility (ECF No. 14, ¶¶ 70, 71). The Amended Complaint, however, pleads no specific, non-conclusory facts establishing an agency relationship that would permit the Court to impute Kennedy/Autogrupo's alleged oral misrepresentations (ECF No. 14, ¶ 28) to MAI. The mere allegation that MAI serves as an "exclusive authorized distributor" and that Kennedy/Autogrupo operates as an "authorized dealer" (ECF No. 14, ¶¶ 8, 9) does not, without more, plausibly establish an agency relationship sufficient to attribute a dealership's sales-floor statements to a separate corporate entity for fraud-in-the-inducement purposes. *Iqbal* requires Plaintiffs to plead facts—not labels—supporting an inference that MAI authorized, directed, or controlled the alleged inducement conduct. 556 U.S. at 678.

To the extent Plaintiffs intended Count IV to function as an extracontractual fraud or tort claim (citing Civil Code Article 1802; *see* ECF No. 14, ¶ 71), it still sounds in fraud and must satisfy Rule 9(b) as to MAI. For the reasons stated above—no pleaded MAI speaker, no identified statement, no time or place, and no particularized facts showing MAI's intent or Plaintiffs' reliance—Count IV fails to meet that standard. The Court should therefore dismiss Count IV with prejudice as to MAI.

### E. All Claims by Plaintiff Kaleb Catala Should Be Dismissed for Lack of Article III and Statutory/Contractual Standing

14

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

The Amended Complaint attempts to shore up Catala's role by adding that he "participated in negotiations," "was a party to the vehicle purchase," personally telephoned MAI on July 28, 2025, and suffered "independent harm" as a regular user of the vehicle during the warranty delay (ECF No. 14, ¶ 6). These additions remain legally insufficient to confer standing.

### 1. Catala Was Not a Signatory to Any Operative Contract and Lacks Contractual Privity

The Amended Complaint identifies Denisse Del Valle Rivera—not Catala—as the "primary borrower and signatory" on Retail Installment Contract No. 82200132217220000003 (ECF No. 14, ¶ 7). The pleading does not allege that Catala executed the Vehicle Purchase Agreement with Kennedy/Autogrupo, the Retail Installment Contract with Popular Auto, or the $3,900.00 Extended Service Contract. Each contract independently forecloses Catala's claims:

Purchase Agreement. The Amended Complaint does not allege that Catala signed the purchase agreement, negotiated any term of the sale as signatory, or appeared as a purchaser (ECF No. 14, ¶¶ 7, 14). Because Catala was not a contracting party, he cannot assert any claim arising from the purchase transaction—including the dolo contractual claim (Count IV), which presupposes that the claimant's consent was vitiated by fraud in the inducement. Dolo under Puerto Rico's Civil Code is a defect of consent, and only a party whose consent the other party actually obtained and vitiated may invoke it. 31 L.P.R.A. § 3408. Catala gave no consent to the purchase agreement; therefore, no consent of his could have been vitiated.

Retail Installment Contract. Del Valle Rivera executed RIC No. 82200132217220000003 as borrower (ECF No. 14, ¶ 7). The Amended Complaint does not allege that Catala signed the RIC, served as a co-borrower, co-applicant, or guarantor on the loan, or bore any repayment obligation thereunder. Catala remains a complete stranger to the financing relationship.

15

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

Extended Service Contract. Plaintiff Del Valle Rivera purchased the $3,900.00 Extended Service Contract at closing (ECF No. 14, ¶ 39). The Amended Complaint does not allege that Catala signed, purchased, or was a beneficiary under this contract. Without privity, Catala cannot claim that Defendants' conduct "rendered the contract worthless."

Catala's absence from these contracts proves equally fatal to his MMWA claim. The MMWA's private right of action extends to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply" with warranty obligations. 15 U.S.C. § 2310(d)(1). The Act defines "consumer" as "a buyer (other than for purposes of resale) of any consumer product" or "any person to whom such product is transferred during the duration of . . . a warranty . . . applicable to such product." 15 U.S.C. § 2301(3). Although the Amended Complaint asserts that Catala "was a 'consumer' within the meaning of 15 U.S.C. §§ 1602(i) and 2301(3)" (ECF No. 14, ¶ 6), it does not allege that Catala bought the Vehicle or that anyone transferred the Vehicle to him under any warranty. Statutory standing under the MMWA requires buyer or transferee status; Catala's presence during negotiations and his use of the Vehicle do not, without more, confer party status to the warranty or transferee status. His July 28, 2025 telephone call to MAI (ECF No. 14, ¶ 34) cannot retroactively create warranty privity that did not exist at purchase.

### 2. Catala Lacks Article III Standing

Article III of the United States Constitution limits federal jurisdiction to "Cases" and "Controversies," requiring a plaintiff to demonstrate (1) an injury in fact that is concrete and particularized, (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992).

16

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

The Amended Complaint does not allege any concrete, particularized injury that Catala suffered individually and independently of Del Valle Rivera's contractual relationships. Catala did not sign the Vehicle Purchase Agreement (ECF No. 14, ¶¶ 7, 14), did not execute the Retail Installment Contract (ECF No. 14, ¶ 7), did not purchase or sign the $3,900.00 Extended Service Contract (ECF No. 14, ¶ 39), and did not make any down payment. Every category of damages alleged—loan overpayments (ECF No. 14, ¶¶ 40–42), the $3,900.00 extended service contract (ECF No. 14, ¶ 39), loss of use (ECF No. 14, ¶ 36), and diminution in value (ECF No. 14, ¶ 31)—flows directly from the three contracts that **only** Del Valle Rivera signed.

Although the Amended Complaint now alleges that Catala "suffered independent harm including financial injury from the fraudulently inflated loan payments, [and] safety exposure during the 150-day unrepaired defect period as a regular user of the Vehicle as his sole means of transportation" (ECF No. 14, ¶ 6), these assertions are conclusory and untethered to any contractual obligation, payment, or individualized loss. The alleged financial injury flows from a loan obligation belonging exclusively to Del Valle Rivera as signatory; any derivative economic harm Catala may experience as a member of her household—a status the Amended Complaint nowhere affirmatively pleads—does not equate to having his own contractual consent vitiated or his own statutory rights infringed. Without a concrete, particularized injury traceable to a Defendant's challenged conduct, Catala cannot satisfy Article III, and this Court therefore lacks subject-matter jurisdiction over the claims he asserts. The Court should dismiss those claims under Rule 12(b)(1).

> *3. Plaintiffs Cannot Assert Claims on Catala's Behalf in the Absence of Individual Injury*

To the extent Plaintiffs contend that Catala has standing as a co-purchaser, co-borrower, or household member who indirectly benefited from the transaction, the pleaded facts do not

17

support such a theory. The Amended Complaint does not allege that Catala was a co-purchaser or co-signer on the Vehicle Purchase Agreement, a co-borrower, co-applicant, or guarantor on the RIC, or a named beneficiary under the Extended Service Contract (ECF No. 14, ¶¶ 6, 7). The Amended Complaint does not allege that Catala made any financial contribution to the purchase, bore any repayment obligation, or paid any premium on the extended warranty. The mere fact that Catala appears alongside Del Valle Rivera in the caption does not create standing or state a claim where the operative facts—execution of all three contracts, reliance on representations during the sales negotiations, warranty dealings, and every category of financial harm—are attributable exclusively to Del Valle Rivera as the sole signatory.

The First Circuit requires each plaintiff to demonstrate standing independently. *Katz v. Pershing, LLC*, 672 F.3d 64, 71–72 (1st Cir. 2012); *see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). Catala's mere inclusion as a named plaintiff does not suffice; he must show individualized injury for each claim and each form of relief. Because the Amended Complaint alleges no individualized injury, contractual relationship, or reliance attributable to Catala, the Court should dismiss with prejudice all claims that Catala asserts.

**CONCLUSION AND PRAYER FOR RELIEF**

For the foregoing reasons—each of which remains valid notwithstanding Plaintiffs' new allegations in their First Amended Complaint (ECF No. 14)—MAI respectfully requests that the Court enter the following orders:

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

1. DISMISS Count II (Magnuson-Moss Warranty Act) against MAI with prejudice under Rule 12(b)(6) for failure to plead a prima facie case and under Rule 12(b)(1) for failure to meet the statutory $50,000.00 amount-in-controversy threshold;

2. In the alternative, DISMISS Count II without prejudice or STAY Count II pending Plaintiffs' exhaustion of administrative remedies before the Department of Consumer Affairs of Puerto Rico (DACO);

3. DISMISS Count IV (Dolo Contractual / Fraudulent Inducement) against MAI with prejudice under Rules 12(b)(6) and 9(b) for failure to plead a prima facie case of dolo, failure to satisfy Rule 9(b)'s particularity requirement, and because MAI is not a party to the contracts Plaintiffs seek to invalidate;

4. DISMISS all claims that Plaintiff Kaleb Catala asserts, or that Plaintiffs assert on his behalf, under Rule 12(b)(1) and Rule 12(b)(6) for lack of Article III standing, absence of statutory and contractual standing, and failure to allege any individualized injury, with prejudice; and

5. GRANT such other and further relief as this Honorable Court deems just and proper.

### Certificate of Service

I HEREBY CERTIFY that on this _____ day of May 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record. Pro se Plaintiffs Kaleb Catala and Denisse Del Valle Rivera were also served by U.S. Mail at Urb. La Providencia, Calle 9 1Q3, Toa Alta, Puerto Rico 00953.

**RESPECTFULLY SUBMITTED**, in the City of San Juan, Puerto Rico, this _____ day of May 2026.

19

*Catala, Et al. v. NSSK San Juan, LLC, Et al.*                    *Docket No. 3:26-cv-01205-JAG*

**ESTRELLA, LLC**
ATTORNEYS & COUNSELORS
P.O. Box 9023596
San Juan, PR 00902-3596
T. (787) 977-5050 / F. (787) 977-5090

/s/ Kenneth C. Suria
Kenneth C. Suria, Esq.
D.P.R. Bar No. 213302
E.: kcsuria@estrellallc.com

*Attorneys for Defendant Motorambar, Inc.*